IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH HARMAN, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NANCY BERRYHILL, | : | |
| *Acting Commissioner of Social Security*, | : | No. 17-4156 |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                      SEPTEMBER 4, 2019

Deborah Harman seeks review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration—and the subsequent affirmance by an Administrative Law Judge—denying Ms. Harman's application for supplemental security income and disability insurance benefits.

After independent consideration of the Administrative Record, submitted pleadings, the United States Magistrate Judge's Report and Recommendation, Ms. Harman's Objections to the R&R, and the Commissioner's Response to the Objections, the Court declines to accept the R&R and remands the case to the Administrative Law Judge, as set forth below.

### BACKGROUND AND PROCEDURAL HISTORY

Ms. Harman has a high school education. Prior to the injury giving rise to her disability claim, Ms. Harman worked as a cashier and customer service representative. On March 20, 2013, Ms. Harman fell from an eight-foot ladder, landing first on her heels then on her buttocks. After Ms. Harman's fall, imaging studies conducted at the Christiana Hospital Emergency Department showed the following injuries: an acute compression fracture of the L1 vertebral body, congenital

spinal stenosis, and fractures of the heel bones in both feet. The attending physicians concluded that back surgery was not warranted at that time but prescribed occupational and physical therapy. They also instructed Ms. Harman to wear a back brace and restricted her from any heavy physical activity for at least six weeks. Ms. Harman received splints for her ankles as well as instructions to ice them and elevate them. She saw a series of doctors after her release from the hospital, including for issues relating to her heels and back, as discussed in greater depth below. *See infra* pp. 8–10. Separately, Ms. Harman's medical records also reflect a history of anxiety and depression.

Ms. Harman applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on February 7, 2014, with an onset date of March 20, 2013. The ALJ issued a decision unfavorable to Ms. Harman. He determined that (1) Ms. Harman has various severe impairments related to her feet and back; (2) those impairments do not meet various listed impairments, (3) Ms. Harman has the residual functional capacity to perform light work, except that she needs to alternate between sitting and standing every 30 minutes; (4) Ms. Harman is unable to perform any past relevant work; and (5) Ms. Harman can perform jobs that exist in significant numbers in the national economy, including cashier, hand packer, and cigar packer. The ALJ therefore concluded that Ms. Harman is not disabled. An Appeals Council denied Ms. Harman's request for review on August 14, 2017.

Ms. Harman then filed this civil action. On May 28, 2019, the magistrate judge issued an R&R recommending that Ms. Harman's request for review be denied. The R&R specifically upheld (1) the ALJ's decision to give only "some weight" to Ms. Harman's treating chiropractor; (2) the ALJ's residual functional capacity finding; and (3) the ALJ's development of the record of Ms. Harman's psychological impairments. Ms. Harman timely objected to the R&R, and the Commissioner responded to those objections.

2

## LEGAL STANDARD

The Court reviews *de novo* "those portions of the Magistrate Judge's Report and Recommendation to which [the claimant] has objected." *Hirschfeld v. Apfel*, 159 F. Supp. 2d 802, 806 (E.D. Pa. 2001) (citing 28 U.S.C. § 636(b)(1)(C)). The Court "may accept, reject, or modify, in whole or in part, the findings and recommendations" made in the R&R. *Id.*

Unlike the Court's review of the R&R, its review of the ALJ's decision is "deferential." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). The Court "exercise[s] plenary review of all legal issues in this case" but is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Id.* (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla but may be less than a preponderance" of evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (citation omitted). Reviewing courts "retain a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence." *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981) (citation omitted).

## DISCUSSION

Ms. Harman raises three objections to the R&R: (1) the ALJ did not reasonably explain his assessment of Ms. Harman's residual functional capacity, (2) the ALJ rejected opinion evidence without reasonable explanation, and (3) the ALJ failed to satisfy his duty to develop the record.[1]

---

[1]  The Commissioner argues that the Court should reject all of Ms. Harman's objections as a matter of course, because they overlap with her affirmative arguments seeking review of the ALJ's decision. *See* Response to Objections at 1–2 (quoting *Martinez v. Astrue*, No. 10-5863, 2011 WL 4974445 at *2, 4 (E.D. Pa. Oct. 19, 2011) ("Repeatedly, courts, both within and outside of the Third Circuit, have held that objections which merely rehash arguments presented to and considered by a magistrate judge are not entitled to de novo review.")). This overlooks, however, the Third Circuit Court of Appeals' instruction that "any appeal to a district court based on an

The Court addresses the first two objections together, each of which relate to the ALJ's analysis of

Ms. Harman's residual functional capacity and whether the medical opinion evidence supported

that analysis.[2] The relevant inquiry here is whether Ms. Harman has (or had) the residual functional

capacity to avoid a disability determination, *i.e.*, whether she could "do sustained work-related

physical and mental activities in a work setting on a regular and continuing basis. A 'regular and

continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social

Security Ruling (SSR) 96-8p; *see also Curry v. Barnhart*, 247 F. Supp. 2d 632, 636 (E.D. Pa. 2003)

(same). Because the Court determines that the ALJ, in making a residual functional capacity

determination, actually misconstrued the record evidence and did not give proper weight to the

opinion of Ms. Harman's treating chiropractor, Dr. Puzio, the Court reverses the ALJ's decision

and remands to the ALJ.

Dr. Puzio determined, in an examination on August 8, 2014, that Ms. Harman was limited

to a three-to-five-hour workday. Medical Records (R. 402).[3] Had the ALJ accepted Dr. Puzio's

---

objection to a Magistrate Judge's order will rehash arguments presented to and considered by the Magistrate Judge. That is—by definition—the very nature of 'review.' In SSI appeals, the plain language of § 636(b)(1) and [precedent] make clear that the standard district courts should apply to such objections is *de novo*." *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (quotations and citations omitted).

[2] An ALJ evaluates each claim using a five-step process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of his past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). Here, the ALJ determined that Ms. Harman was not disabled at step five, and so the Court's analysis only involves that final step of the disability analysis.

[3] The record also contains medical records from a purported second visit with Dr. Puzio. *See* Medical Records (R. 436–38). Although the records from that visit seemingly indicate a finding that Ms. Harman was limited to less than four hours of work daily, Ms. Harman stated in her request

conclusion, it would have also necessitated determining that Ms. Harman was disabled (at least as

of August 8, 2014), because it would mean that Ms. Harman lacked the residual functional capacity

to work on a "regular and ongoing basis." *See* SSR 96-8p.[4]  Although the ALJ gave "some weight"

to Dr. Puzio's conclusion, however, the ALJ stated that he saw "no medical basis for limitation to

working a three to five hour workday." ALJ Decision (R. 66–68).  Instead, the ALJ partially

credited the testimony of a consulting physician, Dr. Digamber, including in particular his

determination that Ms. Harman could sit, stand, and walk for eight hours without interruption. *Id.*

(R. 67–68); *see also* Medical Records (R. 390).[5]  The questions here, therefore, are whether

substantial evidence supported the ALJ's decision to (1) discount the opinion of Ms. Harman's

treating chiropractor, Dr. Puzio, and (2) credit the consulting physician, Dr. Digamber.  The answer

to both questions is no.

According to the R&R, the ALJ was correct to give Dr. Puzio's opinion less weight than

Dr. Digamber's opinion because "'there are few treatment records,'" which is "a fair basis to

discount a treating provider's opinion." *See* R&R at 9 (quoting ALJ Decision (R. 67)).[6]  But the

ALJ seems to have credited all of Dr. Puzio's conclusions *save one*:  his determination that Ms.

Harman could not work a full work day. ALJ Decision (R. 66–68); *see also* Medical Records (R.

---

for review that she "does not rely on" the records from the second visit, which she states, cryptically, "may or may not be authentic." Request for Review at 2.

[4]     *See also Owens v. Barnhart*, 48 F. App'x 624, 626 n.1 (9th Cir. 2002) ("Under the Social Security Act a claimant is disabled if the claimant cannot work on a 'regular and continuing' basis, which means 8 hours a day, 5 days a week.")

[5]     Although the ALJ stated that he gave "partial weight" to Dr. Digamber's assessment of Ms. Harman's "medium residual functional capacity," the ALJ "recognize[d] the assessment to the extent it supports a retained ability to lift, carry, sit, stand, walk, push, pull and perform nonexertional functions adequately to sustain full time work activity." ALJ Decision (R. 67–68).

[6]     The paragraph in which the ALJ commented that "there are few treatment records" refers only to the second of Dr. Puzio's two medical source statements, *see* ALJ Decision (R. 67), but Ms. Harman does not rely on the latter medical source statement. *See supra* n.3.

402). Furthermore, the ALJ's decision to discount the latter conclusion was not, on its face, based on a dearth of treatment records. The ALJ stated:

> Dr. Puzio completed two medical source statements indicating an ability to lift and carry at the light exertion level with the need to alternate sitting and standing at 30-minute intervals during the workday. These portions of the assessment are supported by the evidence, but a limitation to less th[a]n full time is belied by claimant's actual functioning, where she will go on her noted sales trips for two to three days at a time, working long hours each day.

ALJ Decision (R. 67) (citations omitted). According to the ALJ's decision, therefore, he discounted Dr. Puzio's assessment of Ms. Harman's limitations based on Ms. Harman's hearing testimony about her part-time work as a handbag and jewelry salesperson.

The ALJ's characterization of Ms. Harman's testimony, however, is factually inaccurate. Although Ms. Harman testified that she sometimes went on trips for two-to-three days at a time to sell her purses and jewelry, the "long hours" she worked spanned only from 7:30 or 8:00 a.m. until between 12:00 and 2:00 p.m., typically "about four hours or so." Hearing Tr. (R. 81). Even assuming that Ms. Harman worked the longest possible duration during the hours she described—and discounting her testimony that she worked approximately four hours at a time—Ms. Harman would work, at most, from 7:30 a.m. until 2:00 p.m., or six-and-a-half hours, two or three days a week, per occasional trip. Although, in such a hypothetical, on occasion Ms. Harman would work longer hours than the amount approved by Dr. Puzio, Ms. Harman still would not work a full eight-hour day, nor would she work five days a week (as is required for a residual functional capacity determination). Moreover, Ms. Harman's other testimony about her work during these periodic sales trips supports Dr. Puzio's other conclusions. Ms. Harman testified that during the trips she needed to alternate between sitting and standing, and that she could only stand for "about 30 minutes" and sit for "about 40 minutes/30 minutes." *Id.* (R. 85); *see also id.* (R. 82) ("I'm not

6

really working hardly at all; I mean, I sit/walk, sit/walk, oh, get around a little bit, sit, do a little bit on the computer. I can't do much on there real long.").[7] This testimony is consistent with Dr. Puzio's standing and walking limitation, which stated that Ms. Harman should alternate between sitting and standing every 30 minutes. *See* Medical Records (R. 402).

Ms. Harman's limited part-time work selling handbags and jewelry aside, the ALJ also mischaracterized the other evidence that supposedly called into question Dr. Puzio's three-to-five-hour workday limitation. The ALJ wrote:

> Contrary to claimant's disability allegations, the record shows *very little treatment after less than a year*. She apparently still sees Dr. Puzio, a chiropractor, who limits her to less than full time work, but there are few treatment records (Exhibit 10F). Claimant is treated by a primary care source, Alex Bianchi, D.O., but despite her complaints at the hearing, *Dr. Bianchi's notes, particularly the most recent ones, do not even mention ankle or back pain*. The most recent musculoskeletal exam in October 2015 was normal, and there were no observations regarding the ankles or the back. *Although Dr. Bianchi lists multiple diagnoses, none of them includes any reference to pain or physical limitation due to the back or ankles*.

ALJ Decision (R. 67) (emphasis added).[8] This characterization of Ms. Harman's medical records is demonstrably mistaken.

First, the ALJ's observation that "the record shows very little treatment" is dubious. Ms. Harman was injured on March 20, 2013. Thereafter, despite having limited or no health insurance

---

[7] The ALJ wrote that Ms. Harman, while selling her wares, "sits for hours at a time at these shows[.]" ALJ Decision (R. 67). This is mischaracterization of Ms. Harman's testimony, as discussed above.

[8] The ALJ only discussed the supposed sparsity of the record in the context of a medical source statement on which Ms. Harman does not rely. *See supra* nn. 3, 6.

coverage,[9] Ms. Harman still saw numerous medical professionals and regularly sought and

received treatment as described below:

- March 20-25 2013 – After being admitted to the trauma unit at Christiana Hospital Emergency Department, Ms. Harman's imaging showed fractures in her heel bones and an L1 compression fracture in her lower back. Medical Records (R. 284–324). Ms. Harman was given a brace to wear for 6-12 weeks and advised that she could not "perform any heavy physical activity or any driving with the brace on." *Id.* (R. 320–21). She also received wraps and splints for her ankles, which were "nonweightbearing." She was discharged in a wheelchair. *Id.*;

- May 15, 2013 – At Christiana Care Health Service, Ms. Harman received a prescription from a Dr. Volz for 18 physical therapy treatments, including "gait training," "neuromuscular re-education," and other treatments apparently targeted to her foot and back injuries. *Id.* (R. 377);

- June 5, 2013 – X-rays of Ms. Harman's heels and back were conducted by orthopedist Dr. Patterson. *Id.* (R. 380);

- August 5, 2013 – Ms. Harman appeared at St. Clare Medical Outreach for a follow up for "HTN," or hypertension. *Id.* (R. 338). During the examination, Ms. Harman requested a "note for disability" because of her "injury to her back [sic] and feet" and because Christiana Hospital refused to provide an "extension of disability." *Id.* Ms. Harman also identified "minor complaints about her "[s]tatus post fall" but otherwise felt "well." *Id.* Ms. Harman's physical examination revealed ankle "pain" characterized as "swollen ankles [sic]" that were "tender bilaterally with left greater [sic] than right." *Id.* (R. 339). Ms. Harman had a "single crouch" and had "tenderness" and "bony" swelling over both of her heels. *Id.*;

- January, 2014 – During an appointment at St. Clare Medical Outreach (for cold symptoms), Ms. Harman's physical examination notes continued to reflect the same symptoms as during her August 5, 2013 visit: ankle "pain," "swollen ankles [sic]" that were "tender bilaterally with left greater [sic] than right," a "single crouch," and "tenderness" and "bony" swelling over both heels. *Id.* (R. 335–36);

- April 15, 2014 – Ms. Harman met with consulting physician Dr. Digamber. *Id.* (R. 385). Dr. Digamber noted that Ms. Harman was "currently undergoing physical therapy" and that she felt "slightly unsteady" on her feet because she was "wearing a cast for several months." *Id.* He also identified Dr. Puzio as Ms.

---

[9]     *See* ALJ Decision (R. 67) ("Claimant asserts that, at least until recently, she has no medical insurance."); Hearing Tr. (R. 84) ("I haven't been going to a physical therapist for the last two months because my insurance is expired and I'm just receiving Medicaid as of two days ago, sir.").

Harman's "primary care physician." *Id.* (R. 386). Dr. Digamber stated that Ms. Harman (1) "appeared to be in no acute distress" while walking, (2) had a normal "gait," (3) could "walk on heels and toes without difficulty," (4) had a "normal" stance, and (5) could walk and "rise from chair" without difficulty or the assistance of a device. *Id.* Dr. Digamber concluded with the "diagnosis" that Ms. Harman's "broken heels healed very well" and the prognosis "fair." *Id.* (R. 387);

- April 17, 2014 – Ms. Harman began seeing a new physician, Dr. Bianchi. *Id.* (R. 424–25). During the examination, Dr. Bianchi ordered additional x-rays of Ms. Harman's back and heels because she complained of pain in both areas. *Id.*;

- April 21, 2014 – Ms. Harman received x-rays of her back and heels, which were ordered by Dr. Bianchi. *Id.* (R. 422). The back x-ray showed "mild to moderate compression abnormality of L1 vertebral body[,]" the vertebral body Ms. Harman fractured in her March, 2013 fall. *Id.* The heel x-ray revealed "[l]arge bilateral plantar calcaneal spurs," as well as "some deformity and increased sclerosis . . . in the bilateral calcaneal bones." *Id.* The "[d]eformity and increased sclerosis . . . likely represent[ed] changes from healed fractures." *Id.*;

- May 8, 2014 – Ms. Harman had a follow-up with Dr. Bianchi, during which Dr. Bianchi prescribed Motrin for Ms. Harman's lumbar spine pain. *Id.* (R. 419);

- June 2, 2014 – Ms. Harman met with Dr. Bianchi and, among other things, requested additional heel x-rays. *Id.* (R. 415);

- July 23, 2014 – Ms. Harman had an appointment with a Dr. Contompasis, D.P.M.—a doctor of podiatric medicine at "Foot & Ankle Associates, L.L.P." *Id.* (433–34). Although Dr. Contompasis's notes are difficult to decipher, his specialization strongly suggests that this visit related to Ms. Harman's foot issues. Ms. Harman also testified that Dr. Contompasis was her "professional foot guy" who she saw on two occasions. Hearing Tr. (R. 83). Dr. Contompasis prescribed Voltaren, Medical Records (R. 434), which Ms. Harman testified is a gel that she applied to her heels as a pain reliever and anti-inflammatory "so [she was] able to walk and move [her] ankles and [her] tendons." Hearing Tr. (R. 83, 87)

- August 8, 2014 – Dr. Puzio, who Ms. Harman identified as her chiropractor and physical therapist, Hearing Tr. (R. 83); Request for Review at 2, conducted a "Medical Source Statement" regarding Ms. Harman's ability to perform work and related physical activities. Medical Records (R. 402–05). Dr. Puzio (1) listed Ms. Harman's "impairment" as limited to 3-5 cumulative hours of work, (2) limited her lifting to frequent lifting of 10 pounds and occasional lifting of 20 pounds, (3) limited Ms. Harman's standing and walking to "2 to Less Than 6 hours," and (4) limited Ms. Harman's sitting to "Less Than 6 hours" while "periodically alternat[ing] between sitting and standing" every 30 minutes. *Id.* (R. 402). Dr.

Puzio also noted that Ms. Harman was "experiencing balance issues" and placed various postural limitations on Ms. Harman. *Id.* (R. 403).[10]

The record therefore establishes that between March 20, 2013 and at least August 8, 2014, Ms. Harman saw numerous doctors and consistently identified issues with her heels and back. Even in appointments primarily concerned with unrelated health issues, Ms. Harman's medical records reflect that she reported ankle and/or back pain.

Second, the ALJ's characterization of Dr. Bianchi's notes, that they "do not even mention ankle or back pain," ALJ Decision (R. 67), is wrong. Dr. Bianchi's April 17, 2014 notes explicitly reference "lower back pain & heel pain." Medical Records (R. 425). Dr. Bianchi's notes, therefore, as well as the x-rays conducted as a result of Dr. Bianchi's first assessment of Ms. Harman and the fact that Ms. Harman subsequently met with a foot specialist, all support Dr. Puzio's conclusions.

Third and finally, unlike Dr. Puzio's conclusions, Dr. Digamber's analysis does not comport with Ms. Harman's medical records spanning until August 8, 2014. As an initial issue, Dr. Digamber's report was written *before* Ms. Harman had her follow-up x-rays on her back and feet, meaning Dr. Digamber apparently did not have access to the x-rays that showed large bone spurs in Ms. Harman's feet and continued compression abnormality in her spine. Furthermore, Dr. Digamber's conclusions are inconsistent with Ms. Harman's medical record as a whole, at

---

[10] On August 1, 2014, September 7, 2014, November 6, 2014, June 29, 2015, July 27, 2015, and October 30, 2015, Ms. Harman had various appointments with Dr. Bianchi, none of which mention or discuss foot or back pain. *Id.* (R. 406–14). Ms. Harman also disclaims the results of a purported second series of x-rays from December 15, 2015, *see id.* (R. 440), which she notes have an "altered date." Request for Review at 2. Finally, Ms. Harman also spoke with a psychologist, Dr. Hite, as part of the initial determination process for Ms. Harman's disability application. Dr. Hite diagnosed Ms. Harman with a depressive disorder but stated that she had no "restriction on activities of daily living," no "difficulties in maintaining social function," no "difficulties in maintaining concentration, persistence, or pace," and no "repeated episodes of decompensation, each of extended duration." Medical Records (R. 100–01).

least insofar as they relate to the period between March 20, 2013 and August 8, 2014. *See supra* pp. 8–10. Finally, Dr. Digamber's conclusions are inconsistent with Ms. Harman's testimony of pain triggered by too much walking. *See* Hearing Tr. (R. 83–85). "A claimant's testimony regarding his or her subjective pain is entitled to great weight, particularly when supported by competent medical evidence." *Perl v. Barnhart*, No. 03-4580, 2005 WL 579879, at *3 (E.D. Pa. Mar. 10, 2005); *see also Chrupcala v. Heckler*, 829 F.2d 1269, 1276 n.10 (3d Cir. 1987) ("Where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.").

Here, the record did not contain substantial evidence supporting the ALJ's decision to discount the opinion of Dr. Puzio—Ms. Harman's treating chiropractor—in favor of Dr. Digamber—a consulting physician who Ms. Harman only saw once.[11] The ALJ's decision was not supported by his stated reason for discounting Dr. Puzio's testimony—that Ms. Harman's prior work contravened Dr. Puzio's conclusions—nor was it supported by the record as a whole. The Court therefore reverses the ALJ's decision insofar as it misinterpreted the record evidence and only gave "some weight" to Dr. Puzio's conclusions that, as of August 8, 2014, Ms. Harman could

---

[11] In the opposition to Ms. Harman's Request for Review, the Commissioner argues that "checkbox forms," like the Medical Source Statement conducted by Dr. Puzio, "are entitled to little weight at best." Opp. to Request for Review at 7. The Commissioner collects cases in support of this proposition, including a Third Circuit Court of Appeals decision, *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is *only* to check a box or fill in a blank are weak evidence at best.") (emphasis added). These cases, in particular *Mason*, are inapposite. Here, although it is true that Dr. Puzio only was required to "check boxes" to complete the Medical Source Statement that limited Ms. Harman to "3-5 Cumulative Hours" of work, Medical Records (R. 402), the medical records also reflect that Dr. Puzio was *treating* Ms. Harman, with the benefit of having seen Ms. Harman on multiple occasions and having reviewed Ms. Harman's x-rays. As such, Dr. Puzio's report is unlike the check-box report provided by a one-off consultant in *Mason* and the other cases cited by the Commissioner. *See Mason*, 994 F.2d at 1065 (giving little weight to medical report completed by physician associated with New Jersey Division of Vocational Rehabilitation). Further, as discussed above, Dr. Puzio's report is fully consistent with the medical records preceding the report. *See supra* pp. 8–10.

not work for a full, eight-hour work day. Consequently, the Court remands to the ALJ to reconsider Ms. Harman's applications for SSI and DIB, giving proper weight to the record evidence and opinion of Dr. Puzio.[12]

## CONCLUSION

For the foregoing reasons, the Court declines to adopt the Report and Recommendation and remands this case to the Administrative Law Judge for renewed review for the reasons explained in this Memorandum. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[12] Throughout the record and briefing, Dr. Puzio is varyingly referred to as Ms. Harman's "primary care physician," *see* Medical Records (R. 386), "treating chiropractor," *see* Request for Review at 2, and "physical therapist," *see* Hearing Tr. (R. 83). On remand, the ALJ should also determine which category Dr. Puzio falls into, and whether his opinion is entitled to "controlling weight" or some lesser amount of deference. *Compare Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 (3d Cir. 2008) ("Under applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight.") (citation omitted) *with* SSR 06-03p (rescinded effective March 27, 2017) (treating chiropractors as "other sources" whose opinions "show the severity of the individual's impairment(s) and how it affects the individual's ability to function" but which cannot alone "establish the existence of a medically determinable impairment.").

Because the Court remands this case based on the ALJ's failure to properly weigh the evidence and opinion of Dr. Puzio, it does not address Ms. Harman's additional objections to the R&R. *See Steininger v. Barnhart*, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (refusing to address additional arguments because ALJ may revise his findings after remand).